### KINNEY et al. v. CHANNEL STATE BANK et al.    (No. 8869.) *

(Court of Civil Appeals of Texas. Galveston. Oct. 29, 1926. Rehearing Denied Dec. 2, 1926.)

1. **Banks and banking** ⟨key⟩63½—**Banking commissioner acts as executive head of department of state government in matters pertaining to administration of insolvent bank which voluntarily came into his hands and is not subject to orders of district court (Rev. St. 1925, art. 371).**

Banking commissioner exercises duties and powers of executive head of department of state government in all matters pertaining to administration of insolvent bank which voluntarily come into his hands, under Rev. St. 1925, art. 371, and is not subject to orders of any court but state Supreme Court, except with respect to matters which statute requires him to submit to district court, as to which he may stand as receiver appointed by such court.

2. **Mandamus** ⟨key⟩73(1)—**Supreme Court can compel banking commissioner's performance of statutory ministerial duty by mandamus.**

Where banking commissioner refuses to perform statutory ministerial duty, Supreme Court can compel its performance by mandamus.

3. **Banks and banking** ⟨key⟩63½—**Mandamus** ⟨key⟩73(1)—**District court cannot require banking commissioner or liquidating agent in charge of bank to sue to set aside preference or appoint plaintiff to bring such suit.**

District court has no jurisdiction to require banking commissioner or his liquidating agent to bring suit on behalf of bank and its creditors to set aside unlawful preference given to another bank, which took cash and securities to extent of its deposit just before bank closed, or to appoint plaintiff to bring such suit.

4. **Pleading** ⟨key⟩243—**Trial court's lack of jurisdiction of cause of action cannot be cured by amendment.**

Where plaintiffs' cause of action was one of which, from its very nature, trial court had no jurisdiction, such infirmity cannot be cured by amendment.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Proceeding by Mrs. T. G. Kinney and husband against the Channel State Bank, successor to the Central State Bank, and others to require Byron Smith, liquidating agent in charge of the affairs of the American State Bank, to bring suit to set aside an alleged unlawful preference. From a judgment dismissing the suit, plaintiffs appeal. Affirmed.

J. S. Bracewell, of Houston, and H. H. Cooper, of Amarillo, for appellants.

Guynes & Sanders and York & Neeld, all of Houston, for appellees.

PLEASANTS, C. J. This proceeding was instituted in the court below by Mrs. T. G. Kinney, joined by her husband, T. G. Kinney, against the American State Bank, the Channel State Bank, successor to the Central State Bank, Charles O. Austin, commissioner of banking for the state of Texas, and Byron Smith, liquidating agent for the commissioner of banking, to require Byron Smith, liquidating agent in charge of the affairs of the American State Bank to bring suit in behalf of said bank and its creditors to set aside an alleged unlawful preference by which the Central State Bank and its successor, the Channel State Bank, obtained $30,000 of the funds of the insolvent American State Bank, or, in the alternative, to authorize appellants to bring and prosecute such suit under the direction of the court and by an attorney appointed by the court.

The application or petition filed by appellants in the court below, after naming the defendants and their domicile or place of business, alleges, in substance, that on February 21, 1925, Charles O. Austin, banking commissioner, declared the American State Bank insolvent and took charge of its assets and business for the purpose of liquidating the same; that the said commissioner subsequently filed a statement of the assets and liabilities of the bank, showing it to be wholly insolvent, and that it was insolvent many months prior to its being declared insolvent by the commissioner; that petitioner Mrs. Kinney was a depositor of said bank and had on deposit therein as a time deposit the sum of $2,000, upon which interest was payable semiannually at the rate of 4 per cent. per annum, and as such time depositor she was not protected from loss by the guaranty fund of the banking board of the state of Texas, and that petitioner and a large number of other depositors who are not secured by the guaranty fund of the state banking board have suffered serious injury and damage by reason of the acts of said Charles O. Austin, commissioner of banking, and his agents and employés; that S. D. Simpson was, on the dates hereinafter stated, the president of the American State Bank and

of the Central Bank, and had intimate knowledge of the affairs of both, owning a majority of stock in each bank. This petition further alleges as follows:

"That the said R. J. James was a director and officer of each and likewise fully conversant with the affairs of both institutions. That on or about February 12th the said banking commission sent an examiner, —— Swain, to make a periodic examination of said American State Bank and found the same hopelessly insolvent. Said examiner made drastic demands on the officers of said American State Bank to restore its solvency, which said examiner and officers knew could not be met, and that said bank would be ordered closed. That at that time and until the 20th day of February, 1925, the American State Bank had on deposit and was carrying as a deposit $30,000 of the funds of the Central State Bank, a banking corporation, doing business at Magnolia Park in the county of Harris and state of Texas; that said deposit was one not guaranteed by the guaranty fund of the banking board of the state of Texas, but was a time deposit similar to and of like character as the deposit of this petitioner.

"That said Charles O. Austin and his servants, agents, and employés, being bank examiners of the said commissioner of banking, each, every, and all well knew that said American State Bank was insolvent and was wholly unable to pay its depositors in full, and they and each of them likewise knew that the said Central State Bank of Magnolia Park was organized to do business under and by virtue of the laws of the state of Texas, and that its depositors, whose accounts were subject to check, and which were not interest-bearing obligations, and who were not municipal corporations or corporations whose deposits were not guaranteed, were subject to be paid out of the guaranty fund of the banking board of the state of Texas, and that, for the purpose of procuring a preference for the said Central State Bank and said S. D. Simpson and R. J. James as officers thereof, to the detriment and injury of your petitioner and other depositors likewise situated, and while said American State Bank was insolvent and under the domination, control, and direction of said bank examiner for said banking commissioner, Charles O. Austin, the said banking commissioner, through his said examiner and said S. D. Simpson and R. J. James, just before closing said bank and in contemplation thereof, compelled, forced, and required the American State Bank to deliver to the said Central State Bank in discharge of said interest-bearing deposit, $25,000 in Liberty bonds of the United States of America, together with sufficient cash to discharge said $30,000 time deposit, and thereby took from the assets of the said American State Bank cash and securities of cash value in excess of $30,000, and thereby depleted and depreciated the assets subject to distribution among the depositors of the character of this petitioner to the extent of said $30,000, and that such act and conduct on the part of said commissioner was willful, wrongful, and was an effort and was intended to extend to said Central State Bank, a banking corporation, a preference to the extent of its debt exceeding the sum of $30,000, and thereby made said bank examiner and his bondsmen responsible for any damage to the extent of their bond, as well as the banking commissioner responsible to those injured for such wrongful act to the extent of the liability of his bond.

"That demand has heretofore been made upon said banking commissioner and said Central State Bank by the city of Harrisburg, who is a creditor of like character as your petitioner, that suit be filed and said preference be set aside, but that said banking commissioner and his liquidating agent have failed and refused to bring such suit or to require said Central State Bank to refund said money to said insolvent corporation.

"That on the 7th day of April, 1925, the said commissioner of banking took charge of the Central State Bank, declaring the same to be insolvent, and on the same day, by petition filed in this honorable court, requested the permission and authority of this court to convey its assets to the Channel State Bank, a corporation chartered for the purpose of taking over the assets and assuming the liabilities of the said Central State Bank. That the said Channel State Bank was thereafter on the same day, by order of this court, permitted to purchase said assets and said commissioner entered into a contract in writing, a copy of which is on file in cause No. ——, styled Ex parte Central State Bank, pending in this court. That by the terms of said contract with the said banking commissioner of the state of Texas, the said Channel State Bank assumed all the liabilities and contracted and agreed to pay all of the liabilities of the said Central State Bank.

"That it is necessary, in order that justice and equity may be done, that said preference be set aside and said funds restored to said insolvent state bank in order that your petitioner and other creditors likewise situated may receive their just proportion of the insolvent's assets and funds, and your petitioner respectfully prays that your honor either issue his most gracious writ of mandamus, compelling the said liquidating agent of the American State Bank to institute, maintain, and prosecute a suit in behalf of the said American State Bank and its creditors against each and all of the parties connected with said unlawful preference, for the recovery of said $30,000, or such part thereof as the creditors of the American State Bank may be entitled to by reason of the said funds being misappropriated and misapplied or, in the alternative, your petitioner prays that your honor enter an order authorizing and directing your petitioner to file, maintain, and prosecute a suit in behalf of said creditors and herself and said American State Bank, for the recovery of said funds and assets, and for the recovery of such damages as said American State Bank and its creditors, including your petitioner, is entitled to recover by reason of said unlawful act and said unlawful preference, and that such notice as your honor may direct be given to each of the said parties herein of the time and place for a hearing on this application, and that upon such hearing your honor make such order as may be deemed equitable and just, and that any suit filed or required to be filed is to be prosecuted under the direction of this court and under the supervision of such counsel as your honor may appoint and direct to maintain the same."

The defendants or respondents Charles O. Austin, commissioner of banking, Byron

Smith, agent of the commissioner, and the American State ·Bank,. answered by plea in abatement, attacking the jurisdiction of the court on the ground that the plaintiffs' suit for mandamus against the banking commissioner is "entirely within the jurisdiction of the Supreme Court," and, further:

"Respondents say that relator is asking for writ of mandamus to issue from this court, ordering and commanding the head and chief officer of the department of banking commissioner of the state of Texas, one of the executive departments of the state, to perform an act or duty which he is under the law authorized to perform, but which involves the exercise of his judgment and discretion in determining whether such act sought to be commanded is justified under the law and facts, and whether or not there is a reasonable probability of such suit by relator resulting in any benefit to the depositors and creditors of the American State Bank, including the relator and those in whose behalf she sues. That, in determining whether or not the suit demanded by relator should be brought, it is the duty and exclusive authority of respondent Charles O. Austin, as head and chief officer of the department of banking commissioner, to ascertain in time to take proper court action whether or not the facts and law touching the matters alleged in relator's petition call for the suit demanded by relator, and this court is asked by relator's petition to exercise that judgment and discretion for respondent Charles O. Austin and to deny him the right to judge and determine the issues which he,· as one of the chief executive officers of the state government, is by law authorized to pass upon without interference by any court. Wherefore these respondents pray that judgment be entered by this court adjudicating whether or not it take further cognizance of relator's petition."

Respondents further answered by general demurrer and numerous special exceptions, the nature of which need not be shown further than as hereinafter stated. Most of these exceptions present the same questions raised by the plea in abatement.

The fifth special exception further attacks the petition on the ground that it shows upon its face that plaintiff has an adequate remedy at law by suit against the banking commissioner and the bank examiner Swain and the sureties on their official bonds, and suit against the Channel State Bank.

The eighth exception is as follows:

"And further specially excepting to relator's petition, these respondents say same is insufficient in law, in that it shows that relator seeks the writ of mandamus therein prayed for on allegations which in no part of her petition alleges or attempts to, allege there is not sufficient time left in which to bring any and all suits necessary to protect her and those for whom she sues, after proper investigation on the part of respondent Charles O. Austin, and relator is seeking the order prayed for only in anticipation of and on the presumption respondent Charles O. ·Austin will fail and refuse to discharge his duty as such banking commissioner, or fail to exercise his judgment and discretion in time for relator to take such legal steps as may be found reasonably proper or necessary to protect and restore the assets described in relator's petition in event said banking commissioner fails or refuses."

The answer of the Channel State Bank presents the pleas and exceptions contained in the answer of the other defendants..

Upon the hearing in the court below, the exception to the jurisdiction of the court and the plea in abatement were sustained, plaintiff was denied leave to amend, and the suit was dismissed.

Appellants seek a reversal of the judgment upon the following propositions, each of which is presented in their brief as sufficient ground for reversal:

"(1) The commissioner of banking of the state of Texas, and the liquidating agent appointed by him, acting under the statutes of this state, in closing up an insolvent bank, is such a receiver as is subject to, and under the domination and control of, the district court of the county in which such insolvent bank is situated, and in which such proceedings are being had.

"(2) The district court of the county in which an insolvent banking institution is situated, exercising the domination and control over its assets and business conferred by the statutes of this state, is clothed with the power and authority to direct and control the actions of the state commissioner of banking and such liquidating agents as he may appoint in the administration of the affairs and business of such insolvent banking institution.

"(3) The district court of the county in which an insolvent banking institution is located, and which has been selected by the banking commissioner of the state of Texas, administering and liquidating the affairs and business of said insolvent banking institution, under the statutes of the state, is clothed with the power, authority, and jurisdiction to permit and allow a creditor of such insolvent institution to maintain a suit in behalf of such insolvent institution and himself and other creditors, owning and possessing like claim, when it is apparent that the banking commissioner of the state of Texas and his agents and employés have participated in the wrong and injury sought to be corrected.

"(4) The pleading of plaintiff in an action,. that is subject to exception on account of failure to allege specific jurisdictional facts, is subject to amendment for the purpose of supplying such allegations, unless it would delay the trial of the case on its merits.

"(5) The assets and property of an insolvent state banking institution being administered and' liquidated by the banking commissioner of the state of Texas, and his agents, is a trust fund for the payment of all creditors, and the district court in which such state banking commissioner has selected in the county where such insolvent institution was doing business, has the power and' authority to direct the action of such commissioner of banking and to allow other creditors. to maintain a suit or suits to recover such assets and property, where same have been diverted with the consent and connivance of such state banking commissioner."

In our opinion none of these propositions. should be sustained. As shown by their

brief, appellants' case is based upon the theory:

"That, upon the declaration of insolvency of a banking institution, the commissioner of banking of this state becomes a receiver thereof, subject to all the powers and duties of a receiver appointed by the district court of the county in which the insolvent institution may be situated; that the appointment of receiver is not placed with the district judge of the district court, but that, upon the filing of such petition or declaration of insolvency in said court, said court immediately becomes vested with authority and power over such receiver to the same degree as though the appointment had originally been made by him."

In support of their contention, they cite and rely upon the cases of Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, Chapman v. Bank (Tex. Com. App.) 267 S. W. 690, and In re Union Bank of Brooklyn, 96 Misc. Rep. 299, 161 N. Y. S. 29.

The case first cited was a suit for mandamus instituted in the Supreme Court to compel the state commissioner of banking to allow a claim against an insolvent state bank which had been rejected by him. The Supreme Court refused the mandamus on three grounds: (1) Because the court had no jurisdiction to compel the commissioner to allow the claim; (2) because the relator had a plain, adequate, and effective remedy at law; and (3) because the facts stated in the petition did not show that the relator was entitled to the relief sought.

In discussing the questions of the jurisdiction of the Supreme Court and of relator's legal remedy, the court, after citing Revised Statutes 1911, art. 464, which expressly gives one holding a claim against an insolvent state bank which has been rejected by the commissioner a cause of action upon the claim, cites other provisions of the statute which the court holds require such suit to be brought in the district court of the county in which the insolvent bank had its domicile. In reviewing these statutes and deciding the question of what court has jurisdiction of the cause of action, the court uses this language:

"The statute does not in express terms provide that the action authorized must be brought in the district court of the county where the bank had its domicile, but we believe this to be the proper construction, in view of the effect which must be given to other articles of the statute relative to liquidation proceedings. It is likewise clear that the purpose of the various articles touching the control and disposition of the insolvent estate is to place it in custodia legis, and therefore in effect to designate the court administering the estate as the one in which contested actions must be brought."

This language cannot be construed as a holding or declaration that the commissioner of banking, in administering the estate of an insolvent bank, occupies the position of a

288 S.W.—38

receiver of the estate appointed by the district court of the county in which the bank had its domicile, and is subject in all matters pertaining to the administration of the estate to the same control and direction of the court.

[1] In respect to the matters which the statute requires the commissioner to submit to the district court, or to the district judge, if the court is not in session, he may stand in the position of a receiver appointed by the court. But, in all other matters pertaining to the administration of the affairs of an insolvent state bank which has voluntarily come into his hands under the provisions of article 371 of the Revised Statutes 1925, the banking commissioner exercises the duties and powers of an executive head of a department of the state government, and is not subject to the orders of any court other than the Supreme Court of the state. In the case of Ex parte Chetwood, 165 U. S. 443, 17 S. Ct. 385, 41 L. Ed. 782, the Supreme Court of the United States, in passing upon the question of whether a receiver appointed by the Comptroller of Currency to administer the affairs of an insolvent national bank, and who had applied to a district court for an order authorizing him to sell or impound bad or doubtful debts of the bank, thereby became an officer of the court, holds that such a receiver was not an officer of any court but an officer and agent of the United States. This court further says:

"Our attention has been called to no case in which it has been held that the filing of such petitions by national bank receivers in the federal courts operates to make the receiver an officer of the court or to place the assets of the bank within the control of the court in the sense in which control is acquired where a receiver is appointed by the court."

Our statute regulating the winding up of the affairs of an insolvent state bank is similar to the national banking statute, and we think should be given the same construction. The Court of Civil Appeals for the Ninth District, in the case of Hall v. Tyler County, 247 S. W. 582, has construed our statute as we interpret it, and holds that the state banking commissioner "is an officer * * * of the state, whose general authority is wholly independent of the court."

We think this is a sound construction of the statute and conforms with the general purpose and intention of the Legislature, evidenced by the act as a whole, to provide an expeditious and economical method of winding up the affairs of insolvent banks. This evident purpose and intent could not be fully accomplished if the powers of the banking commissioner are restricted to those of a receiver appointed by the district court of the county in which the bank had its domicile.

[2] This does not mean that the banking commissioner is above the courts and can

abuse his power or arbitrarily refuse to perform the duties of his office, and those injured by his abuse of power or neglect of duty have no redress. If he refuses to perform a statutory ministerial duty, the Supreme Court can compel its performance by mandamus.

[3] Other remedies may also be open to appellants, if by the malfeasance, misfeasance, or gross negligence of the commissioner they have sustained injury, but they cannot in this proceeding obtain a mandamus requiring the commissioner or his liquidating agent to bring suit upon the claim asserted in the petition. Neither was the trial court empowered to confer upon plaintiff, or any other person, the powers and authority given the commissioner by the statute by appointing plaintiff as representative of the insolvent bank and its creditors an officer of the court with the right and power to bring the suit upon the direction of the court. None of the cases cited by appellants sustain their contention.

If these conclusions are sound, the plea in abatement was properly sustained and appellants sustained no injury by the refusal of the trial court to permit an amendment of their petition.

[4] If appellants' cause of action was one of which from its very nature the trial court had no jurisdiction, such infirmity could not have been cured by amendment.

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.